UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **CELESTE KING,** <br><br> **Plaintiff,** <br><br> v. <br><br> **COMMISSIONER OF SOCIAL SECURITY,** <br><br> **Defendant.** | Civ. No. 15-1508 (KM) <br><br> **OPINION** |

### KEVIN MCNULTY, U.S.D.J.:

Celeste King brings this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) to review a final decision of the Commissioner of Social Security ("Commissioner") denying her claim for Title II Disability Insurance Benefits ("DIB") and Title XVI Supplemental Security Income ("SSI"). King alleges that she is unable to engage in substantial gainful activity following a work-related injury that occurred on March 16, 2011, when King—then a nurse's aide—was moving a patient. While King reports having experienced symptoms prior to that incident, she alleges that as of March 30, 2011 she was rendered disabled by the following physical and mental impairments: chronic back pain, cervical radiculopathy, vertigo, arthritis, depression, and panic disorder. (Tr. 254)

For the reasons set forth below, the decision of the Administrative Law Judge ("ALJ") is AFFIRMED.

### I.    BACKGROUND

King seeks to reverse or remand an ALJ's finding that she was not disabled from March 30, 2011 through the date of the ALJ's decision, November 26, 2013. King applied for DIB on August 18, 2011, and for SSI on

September 1, 2011. (Tr.[1] 12) Her claims were first denied on February 22, 2012, and again on reconsideration on June 21, 2012. (*Id.*) On June 25, 2012, she filed a request for a hearing. (*Id.*) On February 5, 2013, a hearing was held, at which King appeared and was represented by counsel. (Tr. 31-77) A vocational expert, Josiah Pearson, also appeared and testified at the hearing. (Tr. 66-74) On November 26, 2013, ALJ Dina Loewy denied King's application for DIB and SSI. (Tr. 12-25) On January 27, 2015, the Appeals Council declined to review ALJ Loewy's decision, making the ALJ's decision the final act of the Commissioner. (Tr. 1–6) King now appeals.

## II. APPLICABLE STANDARDS AND BACKGROUND

To qualify for Title II DIB benefits, a claimant must meet the insured status requirements of 42 U.S.C. § 423. To be eligible for SSI benefits, a claimant must meet the income and resource limitations of 42 U.S.C. § 1382. To qualify under either statute, a claimant must show that she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted (or can be expected to last) for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(c), 1382(a).

### A. Five-Step Process and this Court's Standard of Review

Under the authority of the Social Security Act, the Social Security Administration has established a five-step evaluation process for determining whether a claimant is entitled to benefits. 20 CFR §§ 404.1520, 416.920. Review necessarily incorporates a determination of whether the ALJ properly followed the five-step process prescribed by regulation. The steps may be briefly summarized as follows:

---

[1] "Tr." refers to the pages of the administrative record filed by the Commissioner as part of her answer. (Dkt. No. 7)

**Step 1:** Determine whether the claimant has engaged in substantial gainful activity since the onset date of the alleged disability. 20 CFR §§ 404.1520(b), 416.920(b). If not, move to step two.

**Step 2:** Determine if the claimant's alleged impairment, or combination of impairments, is "severe." *Id.* §§ 404.1520(c), 416.920(c). If the claimant has a severe impairment, move to step three.

**Step 3:** Determine whether the impairment meets or equals the criteria of any impairment found in the Listing of Impairments. 20 CFR Pt. 404, Subpt. P, App. 1, Pt. A. If so, the claimant is automatically eligible to receive benefits; if not, move to step four. *Id.* §§ 404.1520(d), 416.920(d).

**Step 4:** Determine whether, despite any severe impairment, the claimant retains the Residual Functional Capacity ("RFC") to perform past relevant work. *Id.* §§ 404.1520(e)–(f), 416.920(e)–(f). If not, move to step five.

**Step 5:** At this point, the burden shifts to the SSA to demonstrate that the claimant, considering her age, education, work experience, and RFC, is capable of performing jobs that exist in significant numbers in the national economy. 20 CFR §§ 404.1520(g), 416.920(g); see *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91–92 (3d Cir. 2007). If so, benefits will be denied; if not, they will be awarded.

As to all legal issues, this Court conducts a plenary review. *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999). As to factual issues, this Court will adhere to the ALJ's findings, as long as they are supported by substantial evidence in the administrative record. *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citing 42 U.S.C. § 405(g)); *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Zirnsak v.*

*Colvin*, 777 F.3d 607, 610 (3d Cir. 2014) (internal quotation and citation omitted). Substantial evidence "is more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *Id.* (internal quotation and citation omitted).

> [I]n evaluating whether substantial evidence supports the ALJ's findings ... leniency should be shown in establishing the claimant's disability, and ... the Secretary's responsibility to rebut it should be strictly construed. Due regard for the beneficent purposes of the legislation requires that a more tolerant standard be used in this administrative proceeding than is applicable in a typical suit in a court of record where the adversary system prevails.

*Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003) (internal citations and quotations omitted). When there is substantial evidence to support the ALJ's factual findings, however, this Court must abide by them. *See Jones*, 364 F.3d at 503 (citing 42 U.S.C. § 405(g)); *Zirnsak*, 777 F.3d at 610–11 ("[W]e are mindful that we must not substitute our own judgment for that of the fact finder.").

This Court may, under 42 U.S.C. § 405(g), affirm, modify, or reverse the Secretary's decision, or it may remand the matter to the Secretary for a rehearing. *Podedworny v. Harris*, 745 F.2d 210, 221 (3d Cir. 1984); *Bordes v. Comm'r of Soc. Sec.*, 235 F. App'x 853, 865–66 (3d Cir. 2007).

Outright reversal with an award of benefits is appropriate only when a fully developed administrative record substantial evidence which, on the whole, establishes that the claimant is disabled and entitled to benefits. *Podedworny*, 745 F.2d at 221-222; *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000); *see also Bantleon v. Comm'r of Soc. Sec.*, 2010 WL 2802266, at *13 (D.N.J. July 15, 2010). Remand is proper if the record is incomplete, or if there is a lack of substantial evidence to support a definitive finding on one or more steps of the five step inquiry. *See Podedworny*, 745 F.2d at 221–22. Remand is also proper if the ALJ's decision lacks adequate reasoning or support for its conclusions, or if it contains illogical or contradictory findings. *See Burnett v. Comm'r of Soc.*

4

*Sec.*, 220 F.3d 112, 119–20 (3d Cir. 2000); *Leech v. Barnhart*, 111 Fed. App'x 652, 658 (3d Cir. 2004)("We will not accept the ALJ's conclusion that Leech was not disabled during the relevant period, where his decision contains significant contradictions and is therefore unreliable."). It is also proper to remand where the ALJ's findings are not the product of a complete review which "'explicitly' weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994).

### B. The ALJ's decision

ALJ Loewy concluded that from March 30, 2011, through November 26, 2013, King was not disabled. (Tr. 24-25) The ALJ's determinations may be summarized as follows.

At step one, the ALJ determined that King had not engaged in substantial gainful activity since March 30, 2011, her alleged disability onset date. (Tr. 14)

At step two, the ALJ found that King had the following severe impairments: back disorder and arthritis. (*Id.*)

At step three, the ALJ determined that King's impairments, alone or in combination, did not meet or medically equal the severity of one of the listed impairments in 20 CFR Pt. 404 Subpt. P, App. 1 (the "Listings"). (Tr. 16)

The ALJ then found that King has the residual functional capacity ("RFC") to: "perform sedentary work ... except the claimant is limited to only occasional right overhead reaching with the non-dominant right arm." (Tr. 17)

At step four, the ALJ determined that, based on her RFC, King is unable to perform any past relevant work. (Tr. 23) The ALJ found that King's past relevant work, as categorized by the vocational expert, was as a nursing assistant, home health aide, and teacher's aide. (*Id.*) The vocational expert testified that those positions could not be filled by someone with King's RFC. (Tr. 69) The ALJ noted that King was 38 years old on her alleged disability onset date, which put her in the category of "younger individual age." (Tr. 23)

5

The ALJ also found that King "has at least a high school education" and is able to communicate in English. (*Id.*) Transferability of job skills was "not material to the determination of disability" because King was not disabled under the Medical-Vocational Rules regardless of transferability of job skills. (*Id.*)

At step five, the ALJ considered King's "residual functional capacity, age, education, and work experience" and determined that King could perform jobs that exist in significant numbers in the national economy. (*Id.*) As noted above, such a finding at step five requires that benefits be denied.

### C. King's appeal

King argues that the ALJ erred in two ways. Though King is not explicit about the step at which she believes the ALJ erred, the alleged errors appear to relate to the determination of King's RFC at step three. First, King argues that the ALJ failed to properly weigh the medical evidence in the record. (Pl. Br.[2] 6-8, Dkt. No. 8) Second, King argues that the ALJ failed to properly assess her credibility. (*Id.* 9-11)

To the contrary, I find that the ALJ's decision was supported by substantial evidence. Accordingly, I will affirm the ALJ's decision.

## III. ANALYSIS

### A. ALJ's consideration of the medical evidence

King argues that the ALJ improperly "rejected [the opinions of] almost all of the doctors who treated or examined" her, including state consultants, treating physicians, and examiners relating to her worker's compensation claim. (Pl. Br. 11) I disagree. I find that the ALJ engaged in an extensive analysis of the medical evidence in the record and provided specific reasons to

---

[2]   This brief and the Commissioner's opposition were submitted pursuant to L. Civ. R. 9.1.

support her weighing of the evidence.

When an ALJ considers medical evidence, the opinion of a medical professional who has treated the claimant is generally entitled to deference. 20 CFR §§ 404.1527(c)(2), 416.927(c)(2)("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s))." But the opinion of a treating source must be given "controlling weight" only when that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." *Id.* The Third Circuit has held that unless there is contradictory medical evidence in the record, an ALJ may not reject a treating physician's opinion. *See Brownawell v. Comm'r of Soc. Sec.*, 554 F.3d 352, 355 (3d Cir. 2008). An ALJ's unsupported judgment, speculation, or lay opinion is not sufficient to outweigh a treating physician's opinion. *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000).

If the treating physician's opinion is not accorded controlling weight, the ALJ must weigh it, like any other medical opinion, in light of the factors set forth in 20 CFR §§ 404.1527, 416.927. *See* 20 CFR §§ 404.1527(c)(1-6), 416.927(c)(1-6)(ALJ must consider: (i) the examining relationship between the claimant and the doctor; (ii) the treatment relationship between the claimant and the doctor; (iii) the extent to which the opinion is supported by relevant evidence; (iv) the extent to which the opinion is consistent with the record as a whole; and (v) whether the doctor providing the opinion is a specialist). Although "contradictory medical evidence is required for an ALJ to reject a treating physician's opinion outright, such an opinion may be afforded more or less weight depending on the extent to which supporting explanations are provided." *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) (citation omitted).

The ALJ's weighing of the evidence in this case was supported by a well-

7

reasoned explanation in line with the regulations, and I find no errors of law or procedure in her analysis.

### a. Opinions of Dr. Hoffman and other state consultants

King argues that the ALJ "failed to accord proper weight" to the opinion of Dr. Hoffman, a consulting orthopedist who examined her on May 17, 2013, following the hearing before ALJ Loewy. (Pl. Br. 6) King states that Dr. Hoffman found that she was able to sit for only three hours of an eight-hour workday, that she was limited in her postural activities, and that she was medically required to use a cane. (Pl. Br. 7) King argues that Dr. Hoffman did not believe King could work full-time, and she asserts that the ALJ did not sufficiently explain her reasoning for rejecting this opinion. (*Id.*) King also argues that the ALJ's rejection of Dr. Hoffman's opinion was doubly improper because it was the ALJ herself who requested the consultative exam following the hearing on February 5, 2013. (Pl. Br. 6-7)

King cites no authority to support her proposition that a one-time consultative exam conducted at the behest of a Social Security agency is entitled to greater weight than any other medical opinion. Appropriately, the ALJ weighed Dr. Hoffman's opinion according to the factors required under 20 CFR §§ 404.1527, 416.927. Specifically, the ALJ found that Dr. Hoffman's opinion contained inconsistencies and was not supported by the record as a whole. *See* 20 CFR §§ 404.1527(3-4), 416.927(3-4).

For example, the ALJ highlighted that Dr. Hoffman said King could lift no weight but provided no explanation for this conclusion, which contradicted his own examination notes. (Tr. 23, 531, 535) His notes stated that she had 5/5 grip strength in her dominant left hand and 4/5 in her right hand and normal strength in the biceps and triceps. (Tr. 23, 531) Dr. Hoffman also concluded that King could not tolerate exposure to humidity, wetness or pulmonary irritants, but his evaluation notes reflected that her chest was clear without any wheezing. (Tr. 23, 531, 540) The ALJ noted that Dr. Hoffman said that

King was required to use a cane, which she carried to the appointment and reported using since 2012. (Tr. 22, 530, 532) The ALJ pointed out that this was inconsistent with the overall record, which consistently reflected that she had a normal gait. (Tr. 19, 22-23; see, e.g., Tr. 317, 319, 321, 324)[3] The ALJ recognized that as a one-time examining physician, Dr. Hoffman was forced to rely largely on King's self-reporting of her symptoms. Tr. 22; see 20 CFR §§ 404.1527(1-2), 416.927(1-2) (instructing ALJ to consider the examining and treatment relationship between the claimant and physician).

Though she focuses on Dr. Hoffman, King also appears to argue very briefly that the ALJ improperly rejected opinions from other consulting physicians who examined her. (See Pl. Br. 11)("The ALJ even rejected the opinions of the doctors that Social Security sent the plaintiff to including perhaps most importantly Dr. Hoffman...."). This argument lacks support. Aside from Dr. Hoffman, King was seen by two consultative examiners, Dr. Fernando and Dr. Candela.[4] The ALJ considered the records from these consultative examinations, and contrary to King's assertion, accepted a number of those physicians' conclusions.

The ALJ's decision does not indicate that she flatly rejected Dr. Fernando's opinion. Rather, the ALJ took note of several aspects of his examination records that were consistent with the rest of the record. The ALJ highlighted that Dr. Fernando's February 2012 examination reflected a normal gait, that King was able to walk on her heels and toes without issue, and that her squat was full. (Tr. 19, 421-22) King's strength was normal at 5/5, her cervical spine showed a full range of motion, and her straight leg raising test

---

[3]   Dr. Candela conducted a mental health examination of King on May 9, 2013, a few days before Dr. Hoffman's examination, and Candela's notes also reflect that King used a cane. (Tr. 525) Notably, in addition to the points the ALJ highlighted in her decision, Dr. Hoffman's records reflect that despite presenting with a cane, King was able to "get onto the table and arise from a supine position without assistance." (Tr. 530-31)

[4]   King's file was also reviewed by additional medical consultants who did not examine her: Drs. Tillman, Huber, Rizwan, and Simpkins. (Tr. 20, 22)

was close to 90 degrees. (Tr. 421-22) Dr. Fernando reported that "the reason for [King's reports of] such tenderness in the back, even on light pressure, was not understandable." (Tr. 19, 422)

The ALJ also gave weight to Dr. Candela's opinion regarding King's mental health status "to the extent that it is consistent with the finding that the claimant does not have a severe [mental] impairment." (Tr. 20, 525-26) The ALJ noted that while Dr. Candela found that King had some "mild limitations in understanding, remembering and carrying out instructions," her mental health examination was largely unremarkable. (Tr. 20, 527) The ALJ added that King's mental impairments being non-severe was supported by the record evidence of her "relatively busy activities, including managing money, socializing with friends, shopping and using the computer." (Tr. 20, 274, 409)

### b. Opinions of treating physicians Drs. Ferrer and Garakani

King also argues that the ALJ failed to give proper weight to the opinions of her treating physicians, Dr. Ferrer and Dr. Garakani. (Pl. Br. 8-9) King states that Dr. Ferrer, a neurologist, found that she had cervical radiculopathy and peripheral neuropathy, pain in her neck and right upper extremity as well as low back and leg pain and intermittent dizziness and vertigo. (Pl. Br. 8) He found that King's pain was severe enough to interfere with her concentration and attention frequently. (*Id.*) King notes that Dr. Garakani, a psychiatrist, found that she had major affective disorder and gave her a "poor prognosis." (*Id.*) He found that she could only sit or stand for fifteen minutes at a time and for one hour total of an eight hour day. (Pl. Br. 9-10) King argues that these opinions should have been given more weight.

The ALJ engaged in a thorough discussion of Dr. Ferrer's examination records. It is clear from the ALJ's decision that she accepted Ferrer's opinion, at least in part. The ALJ's decision incorporated Ferrer's opinions that she found were supported by evidence and consistent with the record, and discounted those that were not. *See* 20 CFR §§ 404.1527(3-4), 416.927(3-4). As

10

the ALJ noted, Ferrer's assessment and treatment of the claimant fluctuated. Following King's workplace accident in March 2011, Ferrer saw her monthly. (Tr. 18, 417) Initially, Ferrer assigned King limited periods of disability, after which she could return to work. See, e.g., Tr. 317, 331, 347. Those periods of disability were from time to time extended, but not indefinitely. (Tr. 21, 317, 331, 347) In fact, the ALJ noted that after September 2011, Ferrer stopped extending King's temporary disability, which the ALJ found did "not indicate that [Ferrer] felt [King] was permanently disabled." (Tr. 21-22; see Tr. 428-434) The ALJ also pointed out that by October 2012, Ferrer was only seeing King every three or four months for fifteen minute check-ups. Tr. 19, 467; see 20 CFR §§ 404.1527(1-2), 416.927(1-2). While the frequency of appointments decreased, Ferrer's assessment of King at times worsened. In October 2012, Ferrer indicated that King could only sit for two hours at a time and stand for one hour. (Tr. 21, 519) Not only was this assessment in tension with King's treatment schedule, it was drastically different from Ferrer's assessment earlier in the year, with no adequate explanation. In January 2012, Ferrer indicated that King could stand, walk, or sit for six hours per day. (Tr. 21, 418) In addition, the ALJ found that some of Ferrer's findings were undercut by incomplete paperwork. (Tr. 21)

Nevertheless, the ALJ credited some of Ferrer's opinions that she deemed well-supported by evidence and the overall record. See 20 CFR §§ 404.1527(3-4), 416.927(3-4). For example, she assigned weight to Ferrer's opinion that King could do no more than "light exertional level work." (Tr. 21, 519-520) In fact, the ALJ's RFC limited King to "sedentary" work, even lower than Ferrer's "light exertional" assessment. (Tr. 17) The ALJ also relied upon the fact that Ferrer's "examinations consistently found that the claimant had no problems with gait or ambulation and she had full strength," which was consistent with the record as a whole. Tr. 21; see, e.g., Tr. 317, 319, 321, 324.

The ALJ similarly explained that she found Dr. Garakani's medical findings lacking in support and inconsistent with the rest of the record. The

ALJ explained that Garakani's paperwork indicated that King had "a number of extreme psychiatric impairments" such as the inability to make simple work-related decisions. (Tr. 20, 474) The ALJ found these limitations inconsistent with Garakani's relatively infrequent schedule of care (he saw King every one to three months). (Tr. 20, 471) The ALJ also found Garakani's assessment to be in tension with King's mental health treatment history as reflected by the record. The ALJ pointed out that while King had received some form of mental health treatment since 1998, her mental health symptoms had never before prevented her from working. (Tr. 20) The ALJ added that, in fact, claimant testified that she had stopped working as a result of a physical injury and not mental health issues. (Tr. 20, 54) The ALJ pointed out that other examinations found King's mental health symptoms to be mild. *See, e.g.*, Tr. 429, 431, 525. The ALJ also explained that she discounted Garakani's assignment of a number of "unexplained physical restrictions," including the inability to sit for more than fifteen minutes at a time, which were not supported by Garakani's examination or the record as a whole. (Tr. 20, 472-74)

### c. Workers' compensation claim examinations

In passing, King also appears to take issue with the ALJ's discounting of the opinions of Drs. Blumenthal, Horowitz, and Corona,[5] who examined King as part of her workers' compensation claim. (*See* Pl. Br. 11) King does not specify which aspects of these physicians' opinions she believes the ALJ should have given more weight. Her argument is further complicated by the fact that, as the ALJ noted in her decision, some of their opinions are not helpful to King. For example, Blumenthal found that King's workplace injury on March 16, 2011 "did not materially aggravate or accelerate her problem," which dated "back to approximately 2002." (Tr. 20, 464) In addition, Dr. Corona found that King was capable of working if she chose to do so. (Tr. 20, 451)

---

[5] Plaintiff only mentions Drs. Blumenthal and Horowitz, but Dr. Corona also examined King in connection with her workers' compensation claim, and the ALJ addressed the records of all three.

Nevertheless, the ALJ's decision to accord the opinions of these doctors "little weight" was an appropriate exercise of her discretion. (Tr. 21) The ALJ explained that because the examinations were conducted in connection with King's workers' compensation claim, they were based on a different standard of evaluation. *Id.*; *see* 20 CFR §§ 404.1527(1-2), 416.927(1-2)(ALJ should consider examining and treating relationship between claimant and physician). She also found that the records were unclear as to King's limitations and lacked an explanation of "what the determinations were based upon." (Tr. 21) For example, the opinions contained percentage estimates of King's level of disability, which were not explained or otherwise supported in a way that would facilitate incorporation into the ALJ's analysis. *Id.*; *see, e.g.*, Tr. 455.

### B. ALJ's assessment of King's credibility

King argues that the ALJ failed to properly assess her credibility, in violation of 20 CFR §§ 404.1529, 416.929 and SSR 96-7p. (Pl. Br. 9)[6] She contends that the ALJ should have given her subjective complaints more weight because they are supported by medical evidence. (*Id.*) In addition, she argues that the ALJ did not properly consider the factors required when assessing a claimant's credibility. (*Id.*) I do not find any errors in the ALJ's approach or reasoning, and I find that her credibility analysis was supported by substantial evidence.

The ALJ had the opportunity to observe King at the hearing, and was well-positioned to assess her credibility. *See Coleman v. Comm'r of Social Sec.*, 494 Fed. App'x 252, 254 (3d Cir. 2012)("We 'ordinarily defer to an ALJ's credibility determination because he or she has the opportunity at a hearing to assess a witness's demeanor.'") (quoting *Reefer v. Barnhart*, 326 F.3d 376, 380 (3d Cir. 2003)). 20 CFR §§ 404.1529(b), 416.929(b) make clear that the claimant's statements about symptoms are not enough to establish disability.

---

[6] King actually cites 20 CFR § 404.1929 and SSR 96-17, an apparent error. The relevant factors, accurately cited by King, actually appear at 20 CFR §§ 404.1529, 416.929 and SSR 96-7p.

Allegations of subjective symptoms must be supported by objective medical evidence. SSR 96–7p.

Of course, an ALJ's impression of the claimant does not stand alone. Under SSR 96–7p, a credibility determination must be based on "the entire case record." The regulation sets forth a two-step process for evaluating a claimant's statements about her own impairments. *Id.* First, the ALJ must "consider whether there is an underlying medically determinable physical or mental impairment(s) ... that could reasonably be expected to produce the individual's pain or other symptoms." *Id.* Second, the ALJ "must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities." *Id.*

At this second step, if the ALJ finds that the claimant's symptoms suggest a greater restriction of function than can be demonstrated by objective evidence alone, she must also consider such factors as:

> (1) The individual's daily activities; (2) The location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) Factors that precipitate and aggravate the symptoms; (4) The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96–7p (citing 20 CFR §§ 404.1529(c), 416.929(c)).

The ALJ's credibility determination "must contain specific reasons for the finding of credibility, supported by the evidence in the case record." SSR 96–7p; *see also* §§ 404.1529(b), 416.929(b). The ALJ must indicate which evidence she

relies on and which she rejects. *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 433 (3d Cir. 1999).

The ALJ explicitly cited the two-step process as well as the factors she applied under SSR 96-7p. (Tr. 17) Under this framework, she found that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (Tr. 18) The ALJ did believe King suffered from multiple impairments; on the whole, however, the ALJ found the record inconsistent with King's testimony about the extent of her limitations and corresponding inability to work. *See* SSR 96-7p ("One strong indicia of the credibility of an individual's statements is their consistency, both internally and with other information in the case record."); *Bailey v. Comm'r of Soc. Sec.*, 354 Fed. App'x 613, 618 (3d Cir. 2009) (ALJ properly discounted claimant's testimony where there were inconsistencies between the testimony and the medical evidence in the record).

With respect to physical limitations, the ALJ found that King suffered from back disorder and arthritis, both severe impairments. (Tr. 14) Accordingly, the ALJ limited King to sedentary work. (Tr. 17) In addition, the ALJ's RFC restricted King to work that entails "only occasional right overhead reaching with the non-dominant right arm," taking into account her subjective complaints of pain. (*Id.*) The ALJ explained, however, that the medical records did not support King's claim that her physical limitations prevented her from working in any capacity. *See* Section III.A., *supra*.

With respect to mental limitations, the ALJ found that King's limitations were "non-severe" based on the medical evidence of record. *See id.*; Tr. 15. Again, however, the ALJ made an effort to incorporate some of King's claimed mental symptoms into the RFC by including a limitation to work involving "simple and routine tasks" (Tr. 15), which would presumably be less taxing or stressful.

In addition to the objective medical evidence in the record, the ALJ found that King's subjective complaints were undermined by her own testimony and behavior. King testified at the hearing that she was still collecting unemployment benefits and that she had attempted to work after June 2011 (her last date of employment) but had not been hired. (Tr. 18, 39-40) To collect unemployment in New Jersey, a claimant must submit that she is available for work, able to work, and actively seeking work. *See* Dkt. No. 9 p. 4; Tr. 22. The ALJ thus found a contradiction between King's statements about unemployment benefits and her testimony regarding her inability to work. Tr. 18, 54; *see* SSR 96-7p (instructing ALJ to consider inconsistencies within the claimant's testimony when assessing credibility); *Craig v. Comm'r of Soc. Sec.*, No. 13-4454, 2014 WL 6667216, at *14 (D.N.J. Nov. 21, 2014)(inconsistencies in claimant's testimony contributed to a lack of credibility). Similarly, in the ALJ's view, King was "malingering" when she brought a cane to her appointment with Dr. Hoffman following the hearing before the ALJ. (Tr. 22) In addition, the ALJ found that King's testimony about her daily activities—including shopping, playing cards, going to church, attending events for her son like football games and track events, and taking public transportation unaccompanied—undermined her testimony that she could not work. (Tr. 16, 274-75, 409) The ALJ, as the fact-finder, was entitled to make these determinations about King's credibility.

King argues that the ALJ's analysis did not address the specific factors required under SSR 96-7p but merely "parrot[ed]" them. (Dkt. No. 10 pp. 9-10). I disagree. Not only did the ALJ explicitly state that she "considered the claimant's testimony based on the factors" under SSR 96-7p, she referred to them throughout her opinion and incorporated them in her analysis. The ALJ relied largely on the second factor (location, duration, frequency and intensity of pain), but she also considered King's daily activities (Tr. 15-16, 20), her medication history (Tr. 15, 18, 20, 22), and the employment (or lack thereof) of alternative treatments besides medicine, including physical therapy, steroid

injections, and surgery. (Tr. 18-19, 22). Accordingly, I find that the ALJ's credibility assessment was supported by substantial evidence.

## IV. CONCLUSION

For the foregoing reasons, the ALJ's decision is **AFFIRMED**. An appropriate order accompanies this Opinion.

Dated: December 18, 2015

_____
**KEVIN MCNULTY**
**United States District Judge**